to present Arturo Cuellar, Jr. in this case. It's an honest services wire fraud case concerning the water system in West Laco, Texas. And the case against the lead defendant in a separate but related criminal case was dismissed in February 9, 2021 before this case was tried. That was Leo Lopez who purportedly paid $4.1 million starting this bribe scheme allegedly. This morning, I would like to discuss the overarching charge of honest services fraud, the scheme under which all the other charges collect. No motion to dismiss the indictment was filed in this case and no agreement to the government's notice to strike surplusage was reached, although they anticipated reaching such an agreement at 246 of the record, they did not do so. The stricken through superseding indictment, though fortunately, was not the major concern. It's what changes happened during trial. And if we can get to it, I'd like to discuss the amendment. But what the court viewed this as, and she mentioned at sentencing, was this was all going to one company that was A, B, and C, CDM with these other consulting engineers under it that we had the initial awards, some modifications, preliminary studies, but all of these were going to go to these entities and anything else that came along the way. So this happened early on, we know from government exhibit 12, which are the minutes from 2005 to 2009 where the commissioners who are volunteers and read minutes relied upon the engineer employed by the city, a government witness Walker testified to that, and then the company that the staff recommended that they hire back in 2006, I think it was October 17th, 2006, they hired CDM initially and then in 2007 decided the city manager would be authorized to hire this CDM as construction manager and approve the construction and the engineering reports and so forth. And in the indictment, we can see all the payments that were made were after that date. Wasn't as significant to notice that until we have the new cases that came out, the US Supreme Court at the end of June, Snyder, Fisher, and then Loper, relentless that was cited under the lower court opinion, relentless, not the one that came out of the Supreme Court overruling Chevron, all came out at the end of June and it's amazing we have these wonderful new cases to inform us, but in Snyder it's significant given the face of the indictment, these payments coming after CDM was selected that we know now that bribes are generally payments made or agreed to before an official act in order to influence that respect to that future official act and that gratuities are afterwards payments made in appreciation. And so that was a very interesting seed change in things. So when I mentioned that I wanted to talk about honest services wire fraud knowing that no motion to dismiss was made, I've expected I need to talk about preservation of error and I need to talk about was there some waiver and how do we analyze this? And fortunately in this court, there's a long standing precedent in the Fitzgerald case cited that when we have a missing element as we argue here in our opening brief that honest services fraud must be a pertinent to a property interest at pages 23 and 24 and that there's a voidness for vagueness on this honest services case. On page 24 of the brief we talk about that and I point out to the court that 1346 is a definition not a new crime that what we have here is a situation where we've got a missing element as we briefed. And so that the, when we're talking about this particular statute where we have really clear language in it, thank goodness, where we have to have that a pertinence to a property interest that Justice Gorsuch, although in a concurrence cited on our reply, said when we have these vague laws, honest services, then we don't want to impersonally hand off to legislatures the responsibility for defining criminal behavior to unelected prosecutors and leave people with no certain way to know what consequences will attach to their conduct and that's the part that's in our reply brief. So summarize for us in one sentence what is the missing element? The missing element is, first of all, that any bribe was paid for tangible property. That quid pro quo judgment is missing. We have in the indictment and in the jury instructions a thing of value was the bribe, not what was obtained for it. And then what we have is it's an official act that's undefined, it's a vote that's not defined what it's a vote for, but nothing about this is for payment of contract monies, that's not in the indictment and it's not in the jury instructions when it talks about this wire fraud slash bribery scheme, it talks about that this is, like I said, the thing of value is the bribe and nothing of value in exchange for that bribe is set forth in the jury instructions concerning wire fraud or bribery of a public official. So I think that's in a nutshell it and then now since Sinclair came out and we look at the face of the indictment and all these payments are in 2014 and CDM's picked in 2006 and 2007 and as Judge Alvarez said there were some amendments and some shifting payments and all that but that was all gonna stay with that one company she found at sentencing. So we, since these are missing elements, Judge, we think that that, and I'm mentioning it quite frankly for the first time here on oral argument about the bribes looking like they're gratuities because they have to affect because we didn't have the benefit of Snyder till today and I just wanna respectfully say to the court I acknowledge that and this court is not deprived of jurisdiction from deciding something that's raised for the first time at oral argument like that because it's very important because when we have someone convicted of a crime where there's a missing element, it serves as an injustice and we have this change in the law. It's very important to hear from this court and there's much authority that supports that it's important to be able to do that when you have such things aligned. It's important an injustice is worked upon, the defendants not just in this case and in many cases and that we have that important change in the law. Although this court was right up there, remember this panel writing that pertinence to property is very important for the wire fraud and we've seen cases that I briefed in the opening brief where the Supreme Court has been really strictly construing statutes. That's not so new. So Fisher and Snyder were not terribly surprising and that's why we cited the lower case opinion in relentless in our reply brief because we anticipated the overruling of Chevron Tumming. So I think what we know is we look at every word in the statute. We knew that before Fisher. Fisher really brought that home and we look at our honest services wire fraud statute. Wire fraud, whoever devised or intended to devise any scheme or artifice to defraud and then the disjunctive or for obtaining money or property by means of all these different means listed. And we know from Simonelli at page 26 of our brief out of the US Supreme Court that even though or for obtaining money or property is disjunctive, we're gonna consider that together and we know now with Fisher too, we're gonna look at every word and even though it's separate clauses, in that case, different statute, 1512, has nothing to do with this case, but there even though C had nothing about requiring it said or otherwise influenced an official proceeding. They said, look, it's gotta be through these documents and other tangible items. You take every word and it tells you what this phrase means. So scheme or artifice to defraud or for obtaining money or property means it has to have that financial, that value. Your initial time has expired. Oh, thank you, Your Honor. Thank you, Ms. Orin. You've saved time for rebuttal. Thank you. Mr. Reeves. Please court, counsel. My name is Walter Reeves and I am here representing Ricardo Pintanilla, one of the defendants in this case. I wanna primarily address two things in my remarks or my argument today. One being the evidentiary issue concerning the invisibility of some recordings and the other is just the general issue about sentencing. The main, as the court knows from the briefs and the records the main really player in this case and who everybody went through was Leo Lopez. Mr. Lopez was provided with, according to the testimony, was provided with money, which he then funneled to different people. Towards the, he was obviously investigated. Eventually he became a cooperating, a cooperating witness. After he became a cooperating witness, there were two meetings that he had with Mr. Pintanilla and Mr. Tafoya. Counsel, I hate to interrupt you, but I think it's important that we establish some dates. When, do you know when Mr. Lopez started to cooperate with the government, when he officially became a cooperating agent and also do you know the date of his death? I don't off the top of my head have either of those. I know there was some testimony just in general about his cooperation and how that came about. Because we'd want to know those dates in connection with the date of the recordings for obvious purposes. That makes a difference, it would seem, based on the briefing. Yes, sir, and I think it's pretty clear and I think everybody has acknowledged that it was before the date of those meetings. That was really, I think it's pretty clear from the transcripts of the meetings that Mr. Lopez was there trying to elicit information. He repeatedly wanted to know what he was gonna say, what Mr. Tafoya was gonna say, what they were gonna tell the investigators. He did acknowledge that he had already been investigated, but I don't think there's really any dispute that he became a cooperating witness beforehand. Did the challenge to the evidence include the defendant objecting to his own recorded statements or simply to comments that Lopez made that are alleged to be hearsay? It was more of a general objection, Your Honor. Obviously, it was clearly a contested issue that started back with the motion in limine before the trial even started. But there was not this, I don't believe there was this specific delineation of what specific comments were being objected to. It was more, the argument was more directed at the fact that Mr. Lopez obviously was no longer available to testify and that these were gonna be recorded statements that were gonna be admissible and be used against Mr. Quintanilla. And again, the transcripts, I think, are pretty clear that one of the issues is whether it's in furtherance of the conspiracy and just the conversation is more that it's in furtherance of Mr. Lopez trying to get incriminating information from Mr. Quintanilla trying to, and he didn't really do a very good job, but repeatedly asking about what they were gonna say, what he had heard, he raised specific issues about the payments that were made. And just generally, it wasn't the normal wiretap or it wasn't the normal conversation that you may have recorded between two conspirators discussing what's gonna happen and what they're gonna do. And then this was also a couple of years really after everything had happened. This was in 2018, long after the payments had been made. The other thing, just briefly, is that I think this case is somewhat unusual because we have a case where the amount of money that the government said was tied to Mr. Quintanilla was less than $100,000. He was tagged and he was sentenced based on four million without really anything other than the assertion or the testimony that that was what Mr. Lopez was paid. Mr. Reeves, your time has expired, but you spent a good bit of time answering Judge Englehart's question. I'm gonna give you one minute, but be sure that you focus on the one minute and tell us what your remaining argument is. Yes, sir. The sentencing issue is that the sentence or the calculation was based on what Mr., or what they identified and portrayed as being the payments that were made to Mr. Lopez. It was pretty clear from sentencing that Judge Alvarez even stated that there wasn't, you couldn't really determine loss. The city of West Laco, city of West Laco was the party that was in the contract. They were the one that supposedly would have suffered some loss. They declined, I mean, they declined to participate even in sentencing. The assumption was because they couldn't tie or they couldn't establish an amount of loss, nobody really established that whether they even got, whether they even suffered any monetary loss or financial loss at all. So with that, I think the sentence just becomes extremely disproportionate to what was actually received. Thank you, Mr. Reeves. Ms. Goway. May it please the court, good morning, Renata Goway for the United States. So I often ask some of your colleagues, so how many Fifth Circuit arguments is this for you? 48. I knew it was a lot, nice to see you again. There is no constructive amendment of the superseding indictment because it was not broadened. It was narrowed before trial with the agreement of the defendants. It's clear from the pre-trial conference that was held the week before trial. Defendants noted at that pre-trial conference that they had been in conversations with the prosecutor about narrowing the indictment. One of the defendants, Garcia, had been dismissed. Lopez had died. And John Cuellar, one of the named defendants in the indictment, had become a cooperator and was testifying against defendants. So with the defendants' agreement before trial, allegations were removed, time periods were shortened, and so their challenges now on appeal are waived because they agreed to those changes. As far as the arguments about whether the superseding indictment alleged honest services fraud, there's no plain error because they didn't challenge that. In the district court, the defendants' crimes are bribery of public officials, and that's within the core of honest services fraud. The cases that they rely on are cases during that brief period of time when the Supreme Court did not recognize honest services fraud. That was in the McNally case. But in Skilling, the court rejected constitutional challenges to the honest services fraud statute as it applies to these core cases, the pre-McNally cases of bribery of public officials. That's what we have here. The quid pro quo arguments are waived because they are raised for the first time in a reply brief. Also, they appear to be an improper challenge to the sufficiency of the evidence which is not raised on appeal. I'm not quite sure that I understand the argument. I think that defendants are conflating honest services fraud and the requirements of honest services fraud and the requirements for federal program bribery. Federal program bribery requires the quid pro quo but does not have an official act, whereas honest services fraud requires bribery of a public official which requires an official act. Regarding federal program bribery, as I mentioned in my Rule 28J letter, the jury was instructed that in order to find the defendants guilty, they had to find a quid pro quo. That was consistent with this court's decision in Hamilton which predated the Supreme Court's decision in Snyder. So that instruction was consistent with both Snyder and Hamilton. The jury found the defendants guilty. And then with honest services fraud, the jury instructions followed the pattern jury instruction on bribery of a public official in the context of honest services fraud which was that the jury had to find the defendants, gave something of value to the commissioners who were public officials and the defendants did so corruptly with intent to influence an official act by the public official. So there's no issue with that there. Turning to Quintanilla's evidentiary challenge to Lopez's recordings, there was a general objection in the district court on appeal. They do not specifically identify the statements in the recordings that they're challenging. These recordings were over, were two recordings totaling about four hours. The meetings both were with Lopez, Quintanilla and Tafoya. By not arguing with specificity, they have waived that challenge. But even if it's not waived, those recordings were admissible because they were part of integrated reciprocal conversation between Lopez who was an informant by then and then the co-conspirators. And they were admitted, they were offered to put Quintanilla's responses in context. And this court has upheld such, the admission of such recordings in several cases including Gutierrez-Chavez and Alaniz which are cited on page 67 of the government's brief and then King which is cited in the government's Rule 28J letter. And in those cases, the court rejected hearsay and confrontation clause challenges to recordings between an informant and other co-conspirators. Regarding the value of payment, that is a guideline adjustment. The guideline adjustment applies the greater of three different things, loss amount, the benefit or the value of payment. The loss amount was estimated to be over $10 million but could not be determined at the time of sentencing. The benefit would have been possibly the value of these contracts which was $42.5 million. Instead, the court went with actually the lesser amount which is the value of payment, the $4.1 million in bribes that Lopez received Lopez was part of the conspiracy with defendants and the total bribe amount is attributed to the defendants through relevant conduct which they did not challenge on appeal. If there are no questions. The recusal issue was not mentioned today but you did brief that. So will you respond to the recusal argument briefly? Yes. No reasonable person with knowledge of the circumstances would harbor any doubts about Judge Alvarez's impartiality. The recusal motion was based on an unremarkable insurance settlement from an auto accident that was between an employee of J3 Trucking, a truck driver, and the judge in her personal capacity. The lawsuit and settlement did not involve Arturo Cuellar except that he accepted the service of process because he was the registered agent of J3 Trucking, Inc. The case did not involve Arturo Cuellar personally and he was not otherwise involved with the case. And the accident was about four years before the indictment in this case. So that the remoteness in time also. And when was the recusal issue first raised? The recusal issue was first raised in a motion about a month after the superseding indictment. The superseding indictment was April 9th, 2019 and the recusal motion was May 6th, 2019. The judge denied that motion in June of 2019. The trial occurred in October of 2022. And in the sentencing in January, 2023, new counsel, appellate counsel, is now representing Arturo Cuellar in attempts to put in a sealed offer. Well, originally it was not sealed. Offer of proof with the record of J3 Trucking, Inc. the state court proceedings. The judge found that that was not necessary because it wasn't anything that was before her at the time that she first ruled on the motion several years earlier. And the original recusal motion had several attachments to it from the state court record. It included a settlement demand letter from the judge's lawyer to J3's insurance company. J3's articles of incorporation, which showed that Arturo Cuellar was the sole director. An affidavit from Arturo Cuellar that J3's insurance policy limit was $1 million. Proof of service of the lawsuit. And then the full and final release showing the settlement details. So, and that was at page 3941 to 3955 of Arturo Cuellar's record. So there was no reason for this offer of proof that was at the sentencing. In their brief, they make several comments about how the judge, the judge's rulings or comments showed some sort of bias. But it's clear from the case law that judicial criticisms, comments, rulings are not enough to show bias unless it rises to the level of a deep-seated antagonism, which did not happen here. Also, at sentencing, the judge imposed a downward variance for Mr. Arturo Cuellar, which also sort of undercuts this argument of bias. The brief, the opening brief seems to allege that the district court judge recused in another case involving the same defendant. Would you address that, please? So there was no recusal. Arturo Cuellar, at the time of these events, was also a county commissioner. And there was a lawsuit involving the county and he was named in that lawsuit. There had been another lawsuit involving the same defendants, same parties, and that was before another judge, Judge Crane. So when the case came before, the prior case, the 2015 case, came before Judge Alvarez, she transferred it to Judge Crane just for purposes of efficiency because he had another case that was related to that. It was not for recusal. And in fact, a recusal motion had not been raised in that 2015 case. Counsel, I'd like to go back to the evidentiary issue and the recordings. What is the relevance? You mentioned that the recordings put the defendants' comments in context. There was one particular comment that came up, I think, in closing arguments as well, that came off of the tape about the beached whale. What is the relevance of that comment in its exposure to the jury, if there's any relevance at all? So the beached whale comment is different from the Lopez recordings. The beached whale comment was not argued by the government in closing. Lefebvre, who was one of the co-conspirators here, during the time of the conspiracy, he had a conversation with Elizabeth Walker, who was the city manager, and he was trying to get paid for these contracts. And during the course of that conversation, he said that these water treatment plants are like a beached whale, and that everybody's feeding off the carcass. That was admissible as a co-conspirator statement in furtherance of the conspiracy. It was not offered for the truth of the matter asserted. It was not hearsay, and it was not testimonial. If there are no other questions, I will yield the rest of my time, and I ask that the Court affirm. Thank you. All right, thank you, Ms. Gover. Ms. Orr for Rebello. Thank you, Judge Smith. I just want to set the Court to page 246 of the record, where the government mentioned it anticipated an agreement about striking items in the indictment, but they reached no such agreement. In the point of error in our brief, point of error three, we mentioned the quid pro quo that it fails to charge any bribe was paid for tangible property, and that's the quid pro quo argument, so it was raised initially. In addition, it's this, when we look at the jury instructions, there's no jury instruction that the quid pro quo has to be a bribe for a thing of value, which is what we're focusing on in that primary complaint, and we know from Fitzgerald, when we have an error such as this, while other circuits might apply a plain error standard to first-time appellate challenges to sufficiency of the indictment, for failure to charge an element of the crime, we found no Fifth Circuit cases that do include the applicable standard is de novo under these circumstances. With regard to the amendment, it's not the stricken items that we were most concerned about. It's that we had a bribe case where people were directed to vote a certain way that went to, post-Snyder, now we know, a gratuity case where we have, well, there's an inference that he wanted me to vote that way, given their star witness' testimony, John Quayer at 925. I inferred he wanted me to vote that way. The charge was a bribe for directed, casted votes, and now we have this inference, and we have constituent, oh, he was asking me questions about what was going on in the city commission meetings, but they were really constituent inquiries at 1228 of John Quayer's testimony, so it wasn't just a shortening of time. It was a much broader conspiracy, or broadening of the charges that, and now, even though no votes were directed, no bribes paid for votes, and nothing received in value for that, and nothing paid in advance of these actions of hiring CDM back in 06 and 07, we now can convict someone because the city commissioner inferred constituent inquiries were requests for official action, and we do stand on our brief on the exclusion of important defense evidence. In the reply brief, we mentioned that with regard to, the recusal issue, Your Honor, it was never alleged that Judge Alvarez was biased. It was that there was an appearance that would cause the public to question the propriety of this judge proceeding in the case under the appropriate standard. She said in her order, it was a well-placed motion to recuse, so it did adequately preserve it. She sued Appellant's wholly owned company. He was the sole owner. It's that appearance that when she got money damages, she asked for a million and received, I think, 60,000 is my recollection. When the court struck my initial offer of proof to include the civil case in the record so the court could be apprised of all those facts, and I understand we all are understandably concerned about appearances before the public, but there was a sensitivity there. There was an admonishment of proper chronic examination by defense counsel, and using personal reflections and information that she knew about the community when sentencing that neither the government, the city of West Laco or anyone else had offered. It was these sorts of things when we look at this personal lawsuit against the applicant's wholly owned company that creates the appearance that should have resulted in recusal. Didn't she sue for between 100 and 200,000, and the one million was the policy limit? Yes, Your Honor, that's correct, and I'm not a civil lawyer, and I don't know how these things work, but I do know that there was a demand for the policy limits at some point. And so then, and I mentioned in the briefing, I've got the information about how we addressed this other suit that was moved out of Record. I don't believe that there was a motion to recuse, and the additional civil suit where Judge Alvarez did remove herself, and again, not suggesting she was biased, that where it appears that, you know, even there the judge treated her previously confident in that other civil case, it would seem that where someone's liberty is at stake would need to be really concerned about the appearance when a judge has sued the appellant. Thank you, Ms. Orr. Thank you, Your Honor. Thank you very much, may I be excused? Yes. Have a good day. Thank you. The next case is United States v.